[Civ. No. 23762. Fourth Dist., Div. Two. Nov. 9, 1981.]

ENGEBRETSON & COMPANY, INC., Plaintiff and Appellant, v. DORIS R. HARRISON, Defendant and Appellant.

**COUNSEL**

Robert B. Webb for Plaintiff and Appellant.

Hill & Hansen and David H. Schwartz for Defendant and Appellant.

OPINION

THE COURT.*—Plaintiff Engebretson & Company, Inc. (Engebretson) brought this independent action in equity to set aside a default and default judgment taken against it by defendant Doris R. Harrison (Harrison). Granting part of the requested relief, the trial court vacated the default judgment but left the default intact. Both parties have appealed.

The appeal raises an important and novel question concerning the proper manner for service of an amended complaint on a party who, though validly served with summons and the original complaint, has not appeared in the action.

Engebretson is a corporation engaged in the business of stock brokerage and investment counseling. In 1972, Harrison entrusted $50,000 to Engebretson to invest and manage for her. In 1975, Harrison sued Engebretson for breach of fiduciary duty, negligence, and fraud. The action was commenced in the Superior Court for the City and County of San Francisco. The complaint alleged damages "in excess of $5,000."

In April 1976, summons and complaint were personally served on the president of Engebretson. In November 1976, a "statement of damages being sought" was mailed to Engebretson. On July 22, 1977, an "amended statement of damages being sought," stating damages in the amount of $60,067.61, was mailed to Engebretson and returned marked "refused." The "amended statement of damages" was filed with the trial court on July 25, 1977, and on the same day a "request to enter default" was mailed to Engebretson and returned marked "refused." On August 4, 1977, the default request was filed and the clerk entered the default of Engebretson.

In September 1977, a notice of motion for default judgment was filed and a copy mailed to Engebretson. The mailing to Engebretson was refused. On October 4, 1977, a default judgment was entered against Engebretson in the amount of $60,067.61.

In July 1978, Harrison commenced enforcement proceedings in Orange County, where Engebretson's principal place of business is located.

---

*Before Tamura, Acting P. J., Kaufman, J., and Morris, J.

In response, Engebretson commenced the present action against Harrison, alleging that the default judgment was void because Engebretson was not served with process and had no actual or constructive knowledge of Harrison's action until after the entry of the default judgment. In an amendment to its complaint, Engebretson alleged it had never been served with any amendments to Harrison's complaint and the relief granted in the default judgment exceeded the prayer of the original complaint.

After trial to the court, the trial judge found there was valid service of the summons and the original complaint upon Engebretson, Engebretson thereby received actual notice of the existence of the action, Engebretson was estopped to deny that it had actual knowledge of the amount of damages sought by its conduct in refusing to accept the papers mailed to it, and the default was validly entered. However, the trial judge also found that the "statement of damages" and "amended statement of damages" were amendments of the complaint, that due process required personal service of these amendments, and that consequently the amendments were invalid and the default judgment was void because the damages awarded exceeded the amount requested in Harrison's original complaint.

On this appeal, Harrison contends the amendments to the complaint were validly served by mail. Engebretson contends the default was prematurely entered, the "amended statement of damages" was not an amendment of the complaint, and the damage allegation of the original complaint was insufficient to establish subject matter jurisdiction in the superior court.[1]

The questions posed on appeal are largely the result of an apparent misreading of sections 425.10 and 425.11 of the Code of Civil Procedure by Harrison's counsel. Section 425.10 provides, in brief, that the complaint shall state the amount of damages sought except in actions "to recover actual or punitive damages for personal injury or wrongful death, in which case the amount thereof shall not be stated."[2] Section 425.11 provides that in actions for personal injury or wrongful death,

---

[1]Engebretson does not challenge the finding that it was validly served with summons and the original complaint.

[2]The purpose of the exception is to protect the defendants from adverse publicity resulting from inflated demands, particularly in medical malpractice cases. (See *Review of Selected 1974 California Legislation* (1975) 6 Pacific L.J. 125, 217.)

the plaintiff shall serve the defendant with "a statement setting forth the nature and amount of damages being sought" upon the request of the defendant, before a default is taken, or 60 days before the date set for trial.

Harrison's counsel followed the procedure set forth in sections 425.10 and 425.11 even though Harrison's action was not for personal injury or wrongful death but instead was an action for injury to intangible financial interests. We are left with the task of sorting out the consequences of this mistake.

■ An action in equity to vacate a judgment is a direct attack upon the judgment. (*Bennett* v. *Hibernia Bank* (1956) 47 Cal.2d 540, 558 [305 P.2d 20].) "Such an attack may be made upon the ground of extrinsic fraud where it appears that there was a willful failure to give the required service or that willfully false affidavits of service were filed. [Citations.] A direct attack has also been allowed in an independent action in equity where there has been a failure to exercise the degree of diligence required by law in connection with personal service [citations], where false recitals of service were the result of fraud, negligence, or mistake [citation], and where failure to name a person as a party was the result of mistake [citation]. These cases are in accord with the general principles followed in recent decisions ... holding that extrinsic mistake may be a ground for vacation of a judgment by an independent action in equity where there has been no fair adversary trial. [Citations.]" (*Id.*, at pp. 558-559.)

"It has been repeatedly held that a defaulting defendant is entitled to be served by an amended complaint when the amendment is as to a matter of substance and not a mere matter of form. . . . The reason for this rule is plain. A defendant is entitled to opportunity to be heard upon the allegations of the complaint on which judgment is sought against him." (*Thompson* v. *Cook* (1942) 20 Cal.2d 564, 568 [127 P.2d 909]. See also, *Ford* v. *Superior Court* (1973) 34 Cal.App.3d 338, 342-343 [109 Cal.Rptr. 844]; *Taliaferro* v. *Taliaferro* (1963) 217 Cal. App.2d 216, 219 [31 Cal.Rptr. 774].) ■ An amendment which significantly increases the amount of damages sought is an amendment of substance which must be served before a default can be entered. (See *Leo* v. *Dunlap* (1968) 260 Cal.App.2d 24, 27-28 [66 Cal.Rptr. 888].)

■ Although it is clear that Harrison was required to notify Engebretson of the request for increased damages by service of an

amendment to the complaint (or an amended complaint), it is by no means clear how this service was to be effected.

The rules governing service of pleadings and other court documents are found in two separate chapters of part 2 of the Code of Civil Procedure. Chapter 4 of title 5, commencing with section 413.10, prescribes the method for service of summons; chapter 5 of title 14, beginning with section 1010, specifies the method of serving "notices and other papers." Commentators have suggested that "[b]ecause the court in which the action is pending has jurisdiction over a defendant who has been properly served with summons (CCP § 410.50), plaintiff need not obtain an additional summons to serve that defendant when the complaint has been amended. Service in such cases is made without summons, usually by mailing a copy of the amended complaint to defendant or his attorney." (1 Cal. Civil Procedure Before Trial (Cont. Ed. Bar 1977) § 8.14, p. 300. See also, Witkin, Cal. Procedure (2d ed.) Actions, § 607, p. 1411, and Pleading, § 17, pp. 1703-1704.)

It is undoubtedly true that a defendant need only be served with summons once[3] and that service of an amended complaint by mail under Code of Civil Procedure section 1012 is sufficient where the defendant has made an appearance in the action. However, section 1014 provides: "After appearance, a defendant or his attorney is entitled to notice of all subsequent proceedings of which notice is required to be given. Where a defendant has not appeared, service of notice or papers need not be made upon him." And section 1010 provides: "No bill of exceptions, notice of appeal, or other notice or paper, other than amendments to the pleadings, or an amended pleading, need be served upon any party whose default has been duly entered or who has not appeared in the action or proceeding."

In view of the well-established rule, reflected in section 1010, that an amendment of substance must be served before a valid default may be

---

[3]Code of Civil Procedure section 471.5, subdivision (a), provides: "If the complaint is amended, a copy of the amendments shall be filed, or the court may, in its discretion, require the complaint as amended to be filed, and a copy of the amendments or amended complaint must be served upon the defendants affected thereby." If there were a requirement for service of a new or amended summons with the amended complaint, it would logically be in this section. The absence of such a provision strongly implies that there is no such requirement.

entered, what are we to make of the provision of section 1014 that service of "notice or papers" is not required upon a defendant who has not appeared? We are of the opinion that this language suggests that in this one situation the amended complaint does not belong to the category of "notice or papers" and that service is not governed by sections 1010-1020.

Our conclusion is fortified by examination of the Federal Rules of Civil Procedure. While these rules have no force in our state courts, of course, they are widely respected as examples of fair and efficient procedure. Subdivision (a) of rule 5 provides, in relevant part: "No service need be made on parties in default for failure to appear except that pleadings asserting new or additional claims for relief against them shall be served upon them *in the manner provided for service of summons* in Rule 4." (Italics supplied.) A commentator has written: "It should be noted that Rule 5(a) expressly requires pleadings asserting new or additional claims for relief against parties in default for failure to appear to be served upon them in the manner prescribed for the service of summons in Rule 4. This requirement is based on notions of fairness, namely, that a party should receive notice of all claims for relief upon which judgment may be entered against him." (2 Moore's Federal Practice (1964) § 5.05, p. 1338.)

We are persuaded that this provision is a wise one and one which we should follow in resolving the ambiguities in our own statutes.

When a complaint is served, the defendant faces the decision to contest the action (perhaps seeking to negotiate a settlement at the same time) or to remain aloof and risk the entry of default. If the defendant fails to appear in the action after valid service of process, it is reasonable to assume the latter course has been chosen. Thereafter, if the complaint is amended in a way which would materially affect the defendant's decision not to contest the action, this new circumstance should be brought home to the defendant with the same force as the notification of the original action. If the amended complaint is merely served by mail, the defendant may assume the papers thus received only catalog the procedural steps taken by the plaintiff to obtain a default judgment on the original complaint and the defendant may fail to examine them with the care they deserve. Also, of course, documents sent by ordinary mail may go astray. They may never be delivered at all, or

may be delivered to the wrong address, or delivered and then lost by an employee at the defendant's office or by another resident at the defendant's home. In all such instances, the defendant's failure to receive the documents will not soon be discovered by the defendant or by the court if the defendant has decided not to appear in the action. Service of the amended complaint in the manner provided for service of summons is much more likely to result in actual notice to the defendant that something has occurred requiring reassessment of the decision not to contest the action.

The trial court's finding that Engebretson should be estopped to deny actual notice of the request for increased damages by virtue of its president's actions in refusing to accept the mailed notices cannot cure the defective service. The law traditionally has not accepted actual notice as a substitute for proper service of process, taking the view that a defendant need not respond if the plaintiff has not observed the statutory requirements for service of summons and complaint. "Merely because an action sounds in equity, it does not justify the court in rewriting the code sections relating to personal jurisdiction by proclaiming that 'substituted service' is just as good as 'personal service' where the defendant in fact receives the papers." (*Sternbeck* v. *Buck* (1957) 148 Cal.App.2d 829, 834 [307 P.2d 970].) "Although a proper basis for personal jurisdiction exists and notice is given in a manner which satisfies the constitutional requirements of due process, service of summons is not effective and the court does not acquire jurisdiction of the party unless the statutory requirements for service of summons are met." (*Schering Corp.* v. *Superior Court* (1975) 52 Cal.App.3d 737, 741 [125 Cal.Rptr. 337]. See also, *Tresway Aero, Inc.* v. *Superior Court* (1971) 5 Cal.3d 431, 435 [96 Cal.Rptr. 571, 487 P.2d 1211].) The cited authorities are pertinent here even though they relate to service of summons. Where the defendant has failed to appear in the action, service of an amended complaint in the manner provided for service of summons, while not necessarily a requirement for personal jurisdiction (see Rest., Judgments, § 5, com. g), is an essential prerequisite to a valid default judgment (*id.*, at § 8, com. a).

We are aware that the statutes providing for service of process """should be liberally construed to effectuate service and uphold the jurisdiction of the court if actual notice has been received by the defendant, and in the last analysis the question of service should be resolved by considering each situation from a practical standpoint."""

(*Pasadena Medi-Center Associates* v. *Superior Court* (1973) 9 Cal.3d 773, 778 [108 Cal.Rptr. 828, 511 P.2d 1180].) We are not dealing here with a minor detail but with an entirely incorrect mode of service, and the defect is significant from a practical standpoint because, as we have explained, a defendant may assume that mailed notices relate to procedural steps in taking default rather than to material changes in the nature of the action.

We conclude that the original complaint was not validly amended because the purported amendments were not served in the manner provided for service of summons. The trial court correctly determined that the default judgment must be vacated because it grants relief not requested in the original complaint. (Code Civ. Proc., § 580.) In view of this conclusion, we need not discuss a number of the issues raised by the parties, including (1) whether the "amended statement of damages" could properly be considered an amendment of the complaint when it was not captioned as an amendment, was not filed after leave of court, was unverified, and did not refer by page and line to the original complaint; (2) whether personal service of an amended complaint is required by procedural due process; and (3) whether the default, as a default to an amended complaint, was prematurely entered and, if so, whether the premature entry resulted in a void judgment.

■ One issue remains to be considered. Engebretson contends that the prayer of Harrison's original complaint seeking damages "in excess of $5,000" was insufficient to establish subject matter jurisdiction in the superior court. Engebretson relies on authorities holding that such a prayer will support a judgment for no more than $5,000, and on the requirement (before July 1, 1979) that the amount in controversy in an action in superior court exceed $5,000. (Former Code Civ. Proc., § 89, now § 86; Cal. Const., art. VI, § 10.) The contention is without merit. While it is true that the prayer will support a default judgment for $5,000 only, and that superior court jurisdiction required, at the time in question, an amount in controversy in excess of $5,000, it does not follow that the prayer of the complaint was insufficient. This is simply an example of the well-known rule that the prayer or demand of the complaint, not the amount actually recovered, determines jurisdiction. (*Sellery* v. *Ward* (1942) 21 Cal.2d 300, 304 [131 Cal.Rptr. 550].) If Engebretson's contention were accepted, a request for damages "in excess of $5,001" would be sufficient, but a prayer for damages "in excess

of $5,000" would not. To so hold would be an insult to common sense and a trap for the unwary. We are satisfied that the prayer was sufficient to invoke the subject matter jurisdiction of the superior court.

The judgment is affirmed.

The petition of defendant and appellant for a hearing by the Supreme. Court was denied January 27, 1982.