Filed 12/11/18; pub. order 1/4/19 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BANN-SHIANG LIZA YU, | |
| Plaintiff and Appellant, | G054522 |
| v. | (Super. Ct. No. 30-2014-00737800) |
| LIBERTY SURPLUS INSURANCE CORPORATION et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, William D. Claster, Judge. Affirmed.

Lex Opus, Mohammed K. Ghods, Jeremy A. Rhyne and Lori Speak for Plaintiff and Appellant.

Burnham Brown, David H. Waters and David S. Wilgus for Defendant and Respondent Liberty Surplus Insurance Corporation.

The Agulera Law Group, A. Eric Aguilera and Raymond E. Brown for Defendant and Respondent Northland Insurance Company.

Wilson, Elser, Moskowitz, Edelman & Dicker and Gregory D. Hagen; Greines, Martin, Stein & Richland, Robert A. Olson and Gary J. Wax for Defendant and Respondent American Safety Indemnity Company.

Selman Breitman, Sheryl W. Leichenger and Todd R. Haas for Defendant and Respondent Scottsdale Indemnity Company.

\* \* \*

Generally, as a fundamental rule, when a civil litigant sues for monetary damages, "the amount demanded must be stated." (Code Civ. Proc., § 425.10, subd. (a)(2).)[1] A demand for "damages according to proof" is insufficient; such a demand does not provide adequate notice to sustain a default judgment. (§ 585, subds. (a) & (b).)

Here, Bann-Shiang Liza Yu hired Automatic Teller Modules, Inc. (ATMI), a general contractor, to design and build a hotel. After the hotel opened, Yu filed a complaint against ATMI for construction defects, praying for "not less than $10 million dollars" in damages. ATMI filed a cross-complaint against its subcontractors, including Fitch Construction and Fitch Plastering (collectively the Fitch Entities). ATMI's cross-complaint prayed for "compensatory damages according to proof."

Yu and ATMI settled their lawsuit. Subsequently, ATMI assigned its cross-complaint rights to Yu, who obtained a $1.2 million default judgment against the Fitch Entities. Yu then sued the alleged insurers of the Fitch Entities, in order to collect on her default judgment. But the trial court voided the underlying default judgment, finding that ATMI's cross-complaint did not state an amount of damages.

Yu appeals. She argues that the damage amount of "not less than $10 million dollars" stated in her initial complaint was "incorporated by reference" in ATMI's cross-complaint against its subcontractors. We disagree. The purported incorporation by reference was "for identification and informational purposes only"; ATMI's cross-complaint did not state an *amount* of alleged damages, the cross-complaint merely prayed for "damages according to proof." Thus, we affirm the judgment.

---

[1] Further undesignated statutory references are to the Code of Civil Procedure.

I

FACTS AND PROCEDURAL BACKGROUND

In January 2002, Yu hired general contractor ATMI to design and build the Candlewood Suites Hotel in Anaheim. ATMI hired numerous subcontractors, including the Fitch Entities, for stucco, paint, and other finishing work.

*The Construction Defect Complaint*

In October 2004, shortly after the hotel opened, Yu filed a complaint against ATMI and others (not the Fitch Entities). The complaint generally alleged construction defects in "15 causes of action, including breach of contract, fraud, and breach of fiduciary duty and warranty." Yu's fourth amended complaint asserted damages "in an amount not less than $10,000,000.00, according to proof."

*The Construction Defect Cross-Complaint*

In June 2006, ATMI filed a cross-complaint against Yu and approximately 20 subcontractors (cross-defendants), including the Fitch Entities. Within the cross-complaint, ATMI stated: "The Fourth Amended Complaint and any future amended complaints filed in this action and any cross-complaints filed in this action are incorporated herein by reference as though fully set forth herein, *for identification and informational purposes only*; by so doing, Cross-Complainant does not admit the truth of any allegations contained therein."[2] (Italics added.)

In the cross-complaint, ATMI alleged the following causes of action as to the subcontractor cross-defendants: negligence, breach of implied warranty, equitable

_____

[2] The parties apparently agree that the fourth amended complaint was not attached to the cross-complaint. However, the parties disagree as to whether the cross-complaint (and the fourth amended complaint) were ever served upon the Fitch Entities. We will assume that the Fitch Entities were served with Yu's complaint and ATMI's cross-complaint.

3

indemnity, contribution, total indemnity, declaratory relief, breach of contract, and express indemnity.

As to the negligence claim, the cross-complaint alleged that the damages were "in an amount precisely unknown." As to the breach of implied warranty claim, the alleged damages were "all in an amount which are presently unknown, but which will be established at the time of trial according to proof." As to the equitable indemnity claim, the alleged damages were "in an amount according to proof." As to the breach of contract claim, the alleged damages were "according to proof at time of trial." As to the express indemnity claim, the alleged damages "will be ascertained and offered as proof of damage at trial or thereafter." The cross-complaint prayed for "compensatory damages according to proof." The Fitch Entities did not file an answer to the cross-complaint.

*The Default Judgment*

In May 2007, ATMI filed a request for entry of a default judgment against the Fitch Entities. Yu and ATMI later entered into a settlement agreement regarding Yu's claims. As part of the settlement, ATMI assigned its rights against the Fitch Entities to Yu, who substituted in as plaintiff in ATMI's cross-complaint. In February 2010, following a prove-up hearing, the trial court entered a default judgment in favor of Yu against the Fitch Entities in the amount of $1,264,604.77.

In August 2012, Northland Insurance Company (Northland) filed a motion to vacate the default judgment. Northland argued that ATMI had failed to state the damage amount in the cross-complaint. The trial court denied the motion, explaining that Northland had an alternative ground for relief: to deny the payment demand and litigate the case in a coverage action. Northland appealed. This court affirmed, concluding that Northland lacked standing to contest the validity of the default judgment. (*Yu v.* [*the Fitch Entities*] *et al.* (Oct. 24, 2013, G047756) [nonpub. opn.].)

4

*The Instant Coverage Lawsuit*

In August 2014, Yu filed a complaint alleging a judgment creditor's action against Northland and Scottsdale Indemnity Company (Scottsdale) in order to collect the $1,264,604.77 default judgment against the Fitch Entities. (Ins. Code, § 11580, subd. (b)(2.).) Yu later amended the complaint to add Liberty Surplus Insurance Corporation (Liberty) and American Safety Indemnity Company (ASIC). In discovery proceedings, Yu responded to ASIC's requests for admissions, admitting "that the Cross-Complaint filed by ATMI did not set out a monetary amount which was specifically sought against the Fitch entities for the result of its conduct."

On November 21, 2016, the trial court granted motions for summary judgment in favor of Scottsdale and ASIC; the court also granted motions for judgments on the pleadings in favor of Liberty and Northland (collectively defendants). The court held that "the Default Judgment is void on its face because the invalidity—here, the absence of a money demand in ATMI's Cross-Complaint—is apparent upon an inspection of the [pleadings] in the Underlying Action." Further, the court stated that "because the cross-complaint filed by ATMI specifically declined to state the amount of damages sought . . . , it seems contradictory to basic notions of due process and fairness to find that cross-defendants have been put on notice of their potential damages by virtue of an allegation in a complaint filed not against them, but against cross-complainant ATMI." Yu appeals.

## II

## DISCUSSION

When a trial court grants a summary judgment motion the standard of review is de novo, in so far as "purely legal issues" are involved. (*Valencia v. SCIS Air Security Corp.* (2015) 241 Cal.App.4th 377, 383.) The same is true when it comes to a judgment on the pleadings. (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160,

5

166 ["In an appeal from a motion granting judgment on the pleadings, we accept as true the facts alleged in the complaint and review the legal issues de novo"].)

Here, ATMI assigned its cross-complaint rights against the Fitch Entities to Yu, who then sued the defendants, the alleged insurers of the Fitch Entities. (Ins. Code, § 11580, subd. (b)(2).) The court granted the defendants' motions for summary judgment and/or judgment on the pleadings on the basis that ATMI's underlying default judgment against the Fitch Entities was void. Yu appeals arguing that the trial court's ruling was legally incorrect. Therefore, our review is de novo.

## A. *The Cross-Complaint Did Not State a Damage Amount.*

California law generally provides that: "A complaint or cross-complaint shall contain both of the following: [¶] (1) A statement of the facts constituting the cause of action, in ordinary and concise language. [¶] (2) A demand for judgment for the relief to which the pleader claims to be entitled. If the recovery of money or damages is demanded, *the amount demanded shall be stated*." (§ 425.10, subd. (a), italics added.) There are exceptions to the general rule; a damage demand need not be stated in a complaint or a cross-complaint in cases involving personal injury or wrongful death, or when the plaintiff is seeking punitive damages. (§§ 425.10, subd. (b), 425.11.) However, in these cases the plaintiff must serve on the defendant a separate written statement as described in section 425.11 (compensatory damages) or section 425.115 (punitive damages) before a default judgment may be taken. (§425.11, subd. (c).)

Procedural due process requires "'that a defendant be given notice of the existence of a lawsuit and notice of the specific relief which is sought *in the complaint served upon him*. The logic underlying this principle is simple: a defendant who has been served with a lawsuit has the right, in view of the relief which the complainant is seeking from him, to decide not to appear and defend. However, a defendant is not in a

6

position to make such a decision if he or she has not been given full notice.' [Citation.]" (*Van Sickle v. Gilbert* (2011) 196 Cal.App.4th 1495, 1520, italics added.)

The Legislature has provided that a default judgment "cannot exceed that demanded in the complaint." (§§ 580, 585, subds. (a) & (b).) "[A] default judgment greater than the amount *specifically demanded* is void as beyond the [trial] court's jurisdiction." (*Greenup v. Rodman* (1986) 42 Cal.3d 822, 826, italics added.) A default judgment is void if the required statement of damages *was not served* on the defendant *before* the default was taken. (*Van Sickle v. Gilbert*, *supra*, 196 Cal.App.4th at p. 1521.) Formal notice "is an essential prerequisite to a valid default judgment." (*Engebretson & Co. v. Harrison* (1981) 125 Cal.App.3d 436, 443-444 [mail service constituted inadequate notice].) A void judgment can be collaterally attacked any time. (*Rochin v. Pat Johnson Manufacturing Co.* (1998) 67 Cal.App.4th 1228, 1239.)

"The statutes dealing with entry of default judgment 'ensure that a defendant who declines to contest an action does not thereby subject himself to open-ended liability. . . .' [Citation.] 'The notice requirement of section 580 was designed to insure fundamental fairness. Surely, this would be undermined if the door were opened to speculation, no matter how reasonable it might appear in a particular case, that *a prayer for damages according to proof provided adequate notice of a defaulting defendant's potential liability*.' [Citation.]" (*Garamendi v. Golden Eagle Ins. Co.* (2004) 116 Cal.App.4th 694, 705, italics added.)

Here, ATMI's cross-complaint against the Fitch Entities prayed for "compensatory damages according to proof." That is, the cross-complaint did not state an "amount" of damages. Since no amount of damages was stated, the Fitch Entities were not put on notice of the amount of the potential default judgment. Further, the default judgment of $1.2 million "exceeded" the "amount" demanded in the cross-complaint ($0). Thus, under the relevant statutes and basic due process considerations, the trial court properly voided the default judgment.

7

*B.  The Damage Amount Was Not Incorporated by Reference.*

Yu argues that ATMI's cross-complaint incorporated by reference the damage amount she had asserted in her initial complaint against ATMI.  We disagree.

"The phrase 'incorporation by reference' is almost universally understood, both by lawyers and nonlawyers, to mean the inclusion, within a body of a document, of text which, although physically separate from the document, becomes as much a *part* of the document as if it had been typed in directly."  (*Republic Bank v. Marine Nat. Bank* (1996) 45 Cal.App.4th 919, 922.)  "'[A] cross-complaint must itself be sufficient and cannot be cured by the pleadings in the original action, that is, the complaint and answer, apart from *permissible incorporation by reference*.'"  (*Pine Terrace Apartment, L.P. v. Windscape, LLC* (2009) 170 Cal.App.4th 1, 17 (*Pine Terrace*), italics added.)

Although widely accepted, neither the Code of Civil Procedure nor the Rules of Court establish any formal requirements for "'*permissible incorporation by reference*.'"  (*Pine Terrace*, *supra*, 170 Cal.App.4th at p. 17, italics added.)  However, in other legal contexts the doctrine of incorporation by reference generally "requires that (1) the reference to another document was clear and unequivocal; (2) the reference was called to the attention of the other party, who consented to that term; and (3) the terms of the incorporated documents were known or easily available to the contracting parties."  (*Kleveland v. Chicago Title Ins. Co*. (2006) 141 Cal.App.4th 761, 765.)

Again, in relevant part, the cross-complaint stated that the:  "Fourth Amended Complaint and any future amended complaints filed in this action and any cross-complaints filed in this action are incorporated herein by reference as though fully set forth herein, *for identification and informational purposes only . . . .*"  (Italics added.) We find that the alleged incorporation of the monetary demand from Yu's fourth amended complaint was not "clear and unequivocal."

Throughout its cross-complaint, ATMI repeatedly stated that its compensatory damage demand against the cross-defendants was either "subject to proof"

8

or "in an amount precisely unknown." This is at odds with the purported demand in Yu's complaint against ATMI asking for "not less than $10 million dollars" in damages. Further, the cross-complaint stated that Yu's complaint was being referred to "for identification and informational purposes only." As a result, it is unreasonable to conclude that the damage demand was effectively called to the Fitch Entities' attention, or that they ever consented to it, or that it was "readily accessible" to them.

In short, we agree with the trial court's assessment that "because the cross-complaint filed by ATMI specifically declined to state the amount of damages sought . . . , it seems contradictory to basic notions of due process and fairness to find that cross-defendants [the Fitch Entities] have been put on notice of their potential damages by virtue of an allegation in a complaint filed not against them, but against cross-complainant ATMI."

Yu primarily relies on *Pine Terrace*, *supra*, 170 Cal.App.4th 1, for the proposition that a cross-complainant can incorporate by reference language from a complaint. But the case is distinguishable, primarily because it does not involve a default judgment. In *Pine Terrace*, a buyer of an apartment complex filed a complaint against the developer-seller for various claims related to construction defects, including "*willful misconduct*." (*Id.* at pp. 5-6, italics added.) The first amended complaint (FAC) described the Doe defendants as "those who '. . . assembled, manufactured, installed, supervised and provided other services and work related to the construction of the Property.'" (*Id.* at pp. 15-16.) The developer-seller filed a cross-complaint against its subcontractors. (*Id.* at pp. 5-6.) The cross-complaint stated: "'The [FAC] is incorporated herein by reference without admitting any of the allegations contained therein.'" (*Id.* at p. 16, italics omitted.)

The trial court granted the subcontractors' motions for summary judgment. (*Pine Terrace*, *supra*, 170 Cal.App.4th. at pp. 5-6.) The court ruled that the "willful misconduct" claim in the buyer's FAC had not been effectively incorporated into the

9

seller-developer's cross-complaint against its subcontractors. (*Ibid*.) The Court of Appeal disagreed: "We conclude that the general rule of law applicable to pleadings permits the Cross-Complaint to incorporate by reference allegations contained in the FAC. The FAC alleges that defendants—a term defined broadly enough to include the Subcontractors—engaged in willful misconduct. It follows that the Cross-Complaint contains an indemnification claim based on willful misconduct." (*Id*. at p. 18.)

We agree with the Court of Appeal's analysis. The cross-complaint in *Pine Terrace* effectively incorporated by reference the facts constituting the cause of action from the initial complaint. (§ 425.10, subd. (a)(1).) Unlike the purported incorporation by ATMI in this case, the general contractor's reference in *Pine Terrace* to the buyer's initial complaint was clear and unequivocal; that is, it put the subcontractors on notice that they were potential defendants if they had "'provided other services and work related to the construction of the Property.'" (*Pine Terrace*, *supra*, 170 Cal.App.4th at p. 16.) Further, unlike the monetary demands in this case, the factual allegations in the cross-complaint were not contradicted by the allegations in the complaint that was being incorporated. But the most significant distinction with *Pine Terrace* is that the Fitch Entities were held liable in a default judgment as a result of the purported incorporation. (See *Engebretson & Co. v. Harrison*, *supra*, 125 Cal.App.3d at pp. 443-444 [formal notice "is an essential prerequisite to a valid default judgment"].)

The damage amount in Yu's initial complaint was not incorporated by reference into ATMI's cross-complaint. Therefore, the cross-complaint did not include a damage amount. Thus, the trial court properly voided the default judgment.[3]

---

[3] We need not address the defendants' alternative arguments for upholding their motions for summary judgment and/or their motions for judgment on the pleadings.

10

*C. Yu's Alternative Arguments Are Not Persuasive.*

Yu argues in the alternative that the default judgment can be upheld because the Fitch Entities purportedly made a general appearance in the underlying action. But Yu cites no authority to support this argument. Indeed, a general appearance may cure a defect in service, but it does not appear to cure noncompliance with demand amount requirements of section 425.10, subdivision (a)(2).

Finally, Yu also argues in the alternative that the Fitch Entities received actual notice of ATMI's damage claim through other documents allegedly served upon them (e.g., "Plaintiff's Final Defect List and Cost of Repair"). Yu argues that: "The Fitch Entities could have readily calculated the damages alleged for the type of work they performed." But this argument is similarly unsupported. (*Schwab v. Southern California Gas Co.* (2004) 114 Cal.App.4th 1308, 1321 ["'*due process requires formal notice* of potential liability; actual notice may not substitute'"].)

III

DISPOSITION

The judgment is affirmed. Respondents to recover costs.

MOORE, ACTING P. J.

WE CONCUR:

ARONSON, J.

THOMPSON, J.

11

Filed 1/4/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BANN-SHIANG LIZA YU,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>LIBERTY SURPLUS INSURANCE CORPORATION et al.,<br><br>    Defendants and Respondents. | G054522<br><br>(Super. Ct. No. 30-2014-00737800)<br><br>ORDER GRANTING REQUESTS FOR PUBLICATION; PETITION FOR REHEARING DENIED; NO CHANGE IN JUDGMENT |

The Association of Southern California Defense Counsel and counsel for respondents have each filed requests that our opinion filed on December 11, 2018, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The requests are GRANTED. The opinion is ordered published in the Official Reports.

On December 28, 2018, Mohammed K. Ghods, on behalf of appellant, filed a response to the requests for publication, in which he requested that if the opinion is ordered published we first "reopen the case for rehearing." To the extent the request is intended as a petition for rehearing, the petition is DENIED as untimely. (Cal. Rules of Court, rule 8.268(b).)

12

No change in judgment.

MOORE, ACTING P. J.

WE CONCUR:

ARONSON, J.

THOMPSON, J.